UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-223-GWU

BILLY BOGGS,                                                         PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

**INTRODUCTION**

The plaintiff brought this action  to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB).  The appeal is currently before the Court on cross-motions for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.  Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2.  See 20 C.F.R. 404.1520(b), 416.920(b).

2.  Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.  Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Boggs

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)?  If yes, the claimant is disabled.  If no, proceed to Step 6.  <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.  <u>See</u> 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it

Boggs

is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established

3

Boggs

medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Boggs

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most

5

Boggs

of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

6

Boggs

physical and mental impairments.   Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Billy Boggs, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease at L5-S1 with moderate lateral focal disc bulging "at L5 and L5-S1," mild narrowing at C5-6 and C6-7, and shortness of breath.  (Tr. 17).  Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Boggs retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits.  (Tr. 18-22).   The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 52 years, high school education, and work experience in coal mining could perform any jobs if he were capable of "light" level exertion, and also had the following non-exertional restrictions. He: (1) was restricted in the range of motion of his neck and needed to avoid all hazards; (2) would require the option of sitting or standing at 15 to 30 minute intervals; and (3) was precluded from work exposing him to dust, fumes, smoke, chemicals, or noxious gases.  (Tr. 47-8).  The VE responded that such a person could perform jobs such as "end assembler," small parts inspector, hand packager, and a variety of "bench work jobs including semiconductor

Boggs

processors," and proceeded to give the numbers in which they existed in the state and national economies.  (Tr. 48).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence.  Mr. Boggs alleged an onset date of May 1, 2003 (Tr. 82), and he had filed prior applications for DIB, the most recent of which had been denied at the initial level on May 3, 2003 and not appealed (Tr. 14).[1]  His Date Last Insured (DLI) was December 31, 2003 (Tr. 15), meaning that he was required to establish disability in the narrow period between May 3rd and December 31st of 2003 in order to be eligible for benefits.

As the ALJ noted, very little evidence submitted in connection with the present application actually concerns the narrow period at issue.

Older records show that Mr. Boggs was treated for a few months at the Comprehensive Care Center (CCC) in 2001 and 2002 for complaints of depression, irritability, and loss of energy after being laid off from his job, and he was given a diagnosis of a depressive disorder and a "relational problem", with a Global Assessment of Functioning (GAF) score of 56.  (Tr. 194,199).   He was given a

-------------------------------

[1]A 1999 DIB application had resulted in an August 15, 2001 ALJ decision finding that he was capable of "medium" level exertion, with additional nonexertional postural and environmental restrictions, a prohibition from work requiring acute bilateral hearing or requiring more than a "limited but satisfactory" ability to understand, remember, and carry out detailed instructions.  (Tr. 57). The ALJ in the present case found that more recent evidence warranted a departure from the previous residual functional capacity finding.  (Tr. 14).

8

Boggs

prescription for Celexa.  (Tr. 199). By May, 2002, he indicated the medication was helping  (Tr. 196), and discontinued treatment shortly thereafter for unclear reasons (Tr. 186).  No treatment for psychological issues took place during the relevant period, and there is no indication of functional restrictions from treating sources (e.g. Tr. 235). State agency psychologists who reviewed the record concluded that the plaintiff did not have a determinable mental impairment as of the DLI.  (Tr. 333, 345, 348). Accordingly, the ALJ's determination of no "severe" mental impairment is supported by substantial evidence.

As far as the plaintiff's physical condition was concerned, the older records show treatment for a variety of problems, including a left knee injury in 1996 (Tr. 135,139), before the plaintiff stopped working, and an evaluation for arm numbness and tingling in 2000, with an EMG study consistent with bilateral median motor neuropathy, with improvement on the medication Neurontin.  (Tr. 254, 256).  By June, 2001, a new EMG showed that the neuropathy was improving.  (Tr. 238, 240). Mr. Boggs was examined for complaints of lower back pain in 2000 and 2001 with an MRI of the lumbar spine in December, 2000 showing degenerative disc disease at L5-S1, a right lateral disc bulge at L4-5 and a moderate bulging annulus at L5-S1, with compromise of the right lateral recess at that level.  (Tr. 241, 324).  He was given injections in addition to muscle relaxers and pain medications, but no functional

Boggs

restrictions were suggested and, by May, 2001, reported that he was "doing pretty good."  (Tr. 242, 244).

The plaintiff was treated by a family nurse practitioner in March, 2003, slightly before his current alleged onset date, for a headache and elevated blood pressure, which improved somewhat on medication, and at that time he also required a refill of medication for hypothyroidism.  (Tr. 235).  He was advised to reduce his weight, exercise, and stop smoking.  (Id.).  By June 17, 2003 his blood pressure was down to 128/88 (Tr. 232), although it was 140/88 in November, 2003 (Tr. 231).  Dr. Arif Bari examined Mr. Boggs on November 26, 2003, at which time his main complaint was swelling and pain in the left gluteal area, "at least one to two centimeters away from the anal opening," which was diagnosed as cellulitis and treated with an antibiotic and hot Sitz baths.  (Tr. 230).

On February 24, 2004, after the DLI, Mr. Boggs again complained of left shoulder and arm weakness, numbness, and pain but only "for a few days," although he had previously been receiving treatment which had been discontinued approximately two years earlier, according to Dr. Bari.  (Tr. 227).   Dr. Bari's examination showed subjective weakness of the left arm and slight discomfort on extreme range of motion testing of the left shoulder and on the anterior aspect of the left wrist.  (Id.).  He ordered the use of Neurontin, Vioxx, and left arm elevation and slinging, along with x-rays.  (Tr. 228).  The x-rays of the cervical spine and left

10

Boggs

shoulder were apparently normal, and Mr. Boggs soon reported improvement in his pain symptoms, although numbness persisted.  (Tr. 224).  The doctor's physical examination showed some improvement in range of motion, although it was still not full range; his assessment was cervical radiculopathy, based on the patient's clinical description and his examination, "despite negative x-rays."  (Tr. 225).

Although Mr. Boggs continued to receive treatment and 2004 and 2005 for complaints of left arm numbness (e.g. Tr. 221) as well as low back pain (e.g. Tr. 395), and cervical spine x-rays made in April, 2005 did show degenerative disc disease and mild encroachment of the neural foramina due to "small bony spurs" (Tr. 393), this was well after the DLI, and treating sources did not impose any functional restrictions. A state agency physician, Dr. H. T. Anzures, reviewed the record in March, 2004, and concluded that Mr. Boggs' physical conditions were less than "severe" as of December 31, 2003, thus providing a specific medical opinion to support the ALJ's decision.

The plaintiff argues on appeal that the ALJ should have given more weight to the opinion of Dr. Ronald Dubin, an orthopedist, who submitted an examination dated January 6, 2005, and also noted that he had seen the plaintiff previously on March 14, 2001 for evaluation of low back pain.  (Tr. 366). Nothing was said about the arm or shoulder pain. Dr. Dubin reviewed the MRI from December, 2000 which reportedly showed a bulging disc, and his examination showed tenderness over the lumbosacral

11

Boggs

spine with positive straight leg raising testing bilaterally at 45 degrees, although reflexes were symmetrical.  He apparently obtained new x-rays showing disc space narrowing at L5-S1, with evidence of spondylolisis between L2-3 with bridging osteophytes.   Dr. Dubin's "impression" was of a "herniated disc" at L4-5 with spondylolysis, and he gave restrictions of occasionally lifting only 10 to 15 pounds with no repetitive bending, stooping, lifting, or crawling.  This was equivalent to a 5 percent impairment. No surgery was indicated.  (Id.).  These restrictions were not specifically "related back" to the period at issue, however.

The ALJ apparently did give some weight to the examination of Dr. Mark Burns in March, 2005.  (Tr. 17).  Dr. Burns reviewed Dr. Dubin's report as well as older records which included the December, 2000 MRI.  (Tr. 374).  Dr. Burns' examination showed full straight leg raising with no tenderness or spasm, normal heel/toe walking, tandem walking, and squatting.  (Tr. 369).  Reflexes were equal, and no ranges of motion were limited.  (Tr. 369-70).  Dr. Burns concluded that Mr. Boggs could perform "medium" level activities with no other restrictions.  (Tr. 373).

While the plaintiff is correct in pointing out the inconsistency of the ALJ considering the report of Dr. Burns, while dismissing the contemporaneous report of Dr. Dubin as being outside the period at issue (Tr. 17), the fact remains that the plaintiff did not produce any medical opinion that he had greater limitations than found by the ALJ before the DLI.  The plaintiff argues that Dr. Dubin should have been given

Boggs

greater weight in view of the fact that he evidently examined Mr. Boggs on two occasions, but his 2001 examination is not in the transcript, and there is still no opinion that the restrictions given by Dr. Dubin in 2005 would have been in effect in 2003.

The plaintiff also argues that the VE did not state whether the jobs given in his testimony would be at the "light" or "sedentary" level, and alleges that if only "sedentary" level work existed, Mr. Boggs would be considered disabled under Rule 202.14 of the Commissioner's Medical-Vocational Guidelines (the "grids").  20 C.F.R. Pt. 404, Subpt. P, App. 2.  However, and as the defendant notes, there is at least one bench assembly job listed in the <u>Dictionary of Occupational Titles</u> (DOT) at Section 715.684-110 which is considered to be at the "light" level.  Therefore, this argument provides no basis for remand.

The decision will be affirmed.

This the 28th day of March, 2007.



**Signed By:**

<u>**G. Wix Unthank**</u>

**United States Senior Judge**

13